UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARIO RIVERO,

          *Plaintiff*,

   -*against*-

INTL FCStone, Inc.,

          *Defendant.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-20-15

14 Civ. 3879 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Mario Rivero sued Defendant INTL FCStone, Inc. ("INTL") for breach of contract, quantum meruit, unjust enrichment, and promissory estoppel, arising out of INTL's alleged failure to compensate Plaintiff for his services in helping INTL obtain Mercon Coffee Corporation ("Mercon"), as a client for INTL's financial services. Plaintiff also seeks a declaration that he is entitled to future compensation. INTL moves to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim. For the reasons set forth below, INTL's 12(b)(1) motion is DENIED, and its 12(b)(6) motion is GRANTED.

## BACKGROUND

    Plaintiff's Complaint alleges that in 2012, INTL, a financial advisory firm, sought an engagement to provide banking and advisory services to non-party Mercon, in connection with the "planned sale of one or more of Mercon's businesses." Compl. ¶ 2. Plaintiff entered into a "binding agreement" with INTL, pursuant to which Plaintiff agreed to assist INTL in procuring

1

Mercon as a client. *Id.* ¶¶ 2, 22. In return, INTL agreed to pay Plaintiff: (1) 10% of INTL's "initial and subsequent retainer fees" from Mercon, (2) 10% of INTL's success fee up to 2% of its total transaction with Mercon, and (3) 50% of any success fee earned by INTL in excess of 2% of the total transaction. *Id.* ¶ 3.

In February 2012, Plaintiff "initiated the relationship" between INTL and Mercon and "effectuated an introduction" between Mercon's CFO and INTL representatives. *Id.* ¶ 11. He also facilitated the execution of a non-disclosure agreement and the exchange of information between INTL and Mercon. *Id.* ¶ 12. In March 2012, Plaintiff attended in-person meetings with INTL in New York, and arranged and participated in teleconferences between INTL and Mercon. *Id.* ¶ 13. In February and March 2012, and "throughout the third quarter of 2012," Plaintiff participated in meetings with INTL and Mercon in Florida. *Id.* Plaintiff "forewent employment opportunities" in order to perform services for INTL. *Id.* ¶ 38.

In April-May 2013, Mercon retained INTL in connection with the sale of Mercon securities. *Id.* ¶ 15. Mercon has "paid retainer fees to INTL" and has agreed to pay INTL a success fee "upon the consummation of a transaction." *Id.* ¶ 16. On June 21, 2013, Plaintiff's counsel sent a letter to INTL demanding payment of "[Plaintiff's] portion of the retainer fees" that Mercon had paid INTL. Plaintiff also sought INTL's acknowledgement that it would honor its "payment obligations to [Plaintiff] going forward." *Id.* ¶ 17. INTL refused Plaintiff's demands. *Id.* ¶ 18. On "numerous subsequent" occasions, Plaintiff sought payment from INTL, but INTL continued to "withhold [Plaintiff's] compensation." *Id.* ¶ 19.

## LEGAL STANDARDS

### I. Subject Matter Jurisdiction

To invoke federal diversity jurisdiction, the amount in controversy must exceed $75,000.

*See* 28 U.S.C. § 1332(a). The party invoking federal jurisdiction bears "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (citation omitted). The burden is "hardly onerous," however, because there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).

To overcome this presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable is less than $75,000. *Id.* "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982). Moreover, an anticipatory commission may satisfy the amount-in-controversy requirement, even if it is unlikely that the commission will be realized. *See Models Nw., Inc. v. Muse Model Mgmt., Inc.*, 2014 U.S. Dist. LEXIS 124444, at *8 (S.D.N.Y. Sept. 4, 2014).

## II.   Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

3

## ANALYSIS

### I.  Subject Matter Jurisdiction

#### A.  12(b)(1) - Subject Matter Jurisdiction

INTL argues that the Complaint does not allege sufficient damages to satisfy the amount-in-controversy requirement. According to declarations submitted by the parties, Mercon has paid INTL an advisory fee of $200,000, and INTL's minimum fee based on the contemplated sale of Mercon's securities is $1.2 million.[1] Plotycia Decl. ¶ 7; Rivero Decl. ¶ 6. Plaintiff asserts that he is entitled to $20,000—10% of the $200,000 advisory fee—as well as at least $300,000, the "minimum total fee" he would receive from INTL's sale of Mercon's securities. Rivero Decl. ¶ 6.

INTL argues that, "by [Plaintiff's] own articulation of his damages," he is only entitled to $20,000, and any additional recovery is purely hypothetical because the Mercon securities have not yet been sold. Mtn., at 3. In addition, INTL argues that the jurisdictional amount cannot include Plaintiff's damages arising from INTL's alleged anticipatory breach of the agreement, because the Complaint states that Plaintiff has already performed his obligations under the agreement. *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 718 (S.D.N.Y. 2012) (a party that has fully performed its obligations under a contract cannot assert anticipatory breach claim).

These arguments are rejected. INTL has not demonstrated to a "legal certainty" that Plaintiff's claim is worth less than $75,000. *See Scherer*, 347 F.3d at 397. Plaintiff seeks not

---

[1] The Complaint does not specify the amount of compensation that Plaintiff claims he is owed; however, "in considering a motion to dismiss for lack of subject matter jurisdiction," the Court "may consider evidence outside the pleadings, such as affidavits." *See Louis Hornick & Co., Inc. v. Darbyco, Inc.*, 2013 U.S. Dist. LEXIS 102819, at *4-5 (S.D.N.Y. July 23, 2013).

only damages relating to his breach of contract claim, but also a declaration that he is entitled to compensation for the sale of Mercon's securities. The Complaint indicates, and INTL does not dispute, that INTL and Mercon are moving forward with that transaction. *See* Compl. ¶ 15. Plaintiff's fees from the sale, under the alleged agreement, would exceed the jurisdictional threshold. *See Models Northwest, Inc.*, 2014 U.S. Dist. LEXIS 124444, at *8. Furthermore, even if Plaintiff cannot prevail on his claim that INTL anticipatorily breached the parties' agreement, such an argument "is an attack on the merits, not jurisdiction." *See Neumann v. Iovino*, 2007 U.S. Dist. LEXIS 50374, at *9 (S.D.N.Y. July 11, 2007).

## II. Contract Claim

### a. Choice of Law

INTL argues that New York's statute of frauds bars Plaintiff's breach of contract claim. Plaintiff responds that Florida law applies because he negotiated his contract with INTL in Florida and performed the "vast majority" of his work there.

A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state. *See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006). Under New York law, "the first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993). For breach of contract claims, if a conflict exists, the court determines the "center of gravity" of the contract. *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). In performing this analysis, courts consider the state in which the parties formed, negotiated, and performed the contract, as well as the domicile or place of business of the contracting parties. *See id.* Courts may also consider public policy if "the

policies underlying conflicting laws . . . are readily identifiable and reflect strong governmental interests." *In re Allstate*, 81 N.Y.2d at 226.

New York's statute of frauds provides that certain contracts must be in writing, including:

> [C]ontract[s] to pay compensation for services rendered in . . . negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein.

N.Y. Gen. Oblig. Law § 5-701(a)(10). The statute defines "negotiating" to include "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction." *Id.* The statute of frauds therefore applies when an "intermediary" seeks compensation for providing "'know how' or 'know-who,' in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise." *Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 267 (1977); *see Ely v. Perthius*, 2013 U.S. Dist. LEXIS 14952, at *7 (S.D.N.Y. Jan. 29, 2013) ("Section 5-701(a)(10) is a broad umbrella that includes the use of 'connections,' 'ability' and 'knowledge' to facilitate or assist in [a] transaction by helping the acquirer of the business opportunity meet the right people and have the right information.") (citation omitted).

Florida's statute of frauds, on the other hand, does not prohibit an oral agreement to negotiate a business opportunity. *See* Fla. Stat. § 725.01. The laws of the two states conflict with one another.

Given this conflict, the "center of gravity" analysis determines which state has the most significant interest in the litigation. *See Forest Park*, 683 F.3d at 433. In his opposition, Plaintiff asserts that Mercon is based in Florida, and that Plaintiff negotiated his contract with INTL and performed the "vast majority" of his work there. Opp. Mtn., at 10. The Complaint, however,

6

merely states that Plaintiff is a resident of Florida, and that he "attended and participated in meetings" in Miami with INTL and Mercon. Compl. ¶¶ 7, 13.

On the other hand, INTL's headquarters are in New York, and Plaintiff "attended in-person meetings" with INTL representatives there. *Id.* ¶¶ 8, 13. Moreover, New York has a strong public policy interest in applying its statute of frauds to finder's fee actions. *See Prescient Acquisition Group, Inc. v. MJ Pub. Trust*, 2006 U.S. Dist. LEXIS 52879, at *22-23 (S.D.N.Y. July 31, 2006) (New York has the "paramount interest" in applying statute of frauds to finder's fee actions because it is a "national and international center for the purchase and sale of businesses and interests therein") (citation omitted). Applying the "center of gravity" test, taking into account New York's public policy interest in applying its statute of frauds, the Court determines that New York law governs Plaintiff's claim.

### b. Breach of Contract

Plaintiff argues that the statute of frauds does not apply to his agreement with INTL because he "has played—and will play—no part whatsoever in effecting the sale of Mericon's business." Opp. Mtn., at 11. It is clear from the Complaint, however, that Plaintiff's actions fall squarely within those contemplated by the New York statute of frauds. Indeed, Plaintiff alleges that he "initiated the relationship" between INTL and Mercon, that he "effectuated an introduction," and that he "facilitated the execution [of a non-disclosure agreement] by Mercon and INTL." *Id.* ¶¶ 11-12; *see* N.Y. Gen. Oblig. Law § 5-701(a)(10) (defining "negotiating" as "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction"); *Freedman*, 43 N.Y.2d at 267.

Accordingly, for Plaintiff to "survive a motion to dismiss, [he] must plead [that] there was a written agreement" that satisfies the statute of frauds. *See Ely*, 2013 U.S. Dist. LEXIS 14952, at *10. Yet while the Complaint alleges that Plaintiff and INTL formed a "binding

agreement," it does not specify whether the agreement was oral or written. Compl. ¶ 2. Nor does it attach or describe any written documents that may partially or fully satisfy the statute of frauds. *Cf. Direct Inv. Partners v. Cerberus Global Invs., LLC*, 2008 U.S. Dist. LEXIS 8953, at *19 (S.D.N.Y. Feb. 7, 2008) (multiple documents, "taken together," satisfied statute of frauds, where the documents were attached to or described in detail in the complaint). Moreover, in his opposition, Plaintiff does not state that a written agreement exists. Instead, Plaintiff argues that the statute of frauds does not apply but that, even if it does, he is entitled to discovery because "internal memoranda may be used" to satisfy the statute. Opp. Mtn., at 12. But such unsupported allegations are insufficient to withstand a motion to dismiss. *See Zeising v. Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) ("Consideration of the Statute of Frauds as an affirmative defense is appropriate on a motion to dismiss, as such a motion is intended to weed out meritless claims, avoiding needless efforts on the parts of the parties and the Court and avoiding needless discovery."). Accordingly, INTL's motion to dismiss the breach of contract claim is GRANTED.

### III.   Quasi-Contractual Claims

#### a.   Quantum Meruit and Unjust Enrichment

Plaintiff also asserts claims for quantum meruit and unjust enrichment. New York's statute of frauds, however, "extends to a contract implied in fact or in law." *United Res. Recovery Corp. v. Ramko Venture Mgmt. Inc.*, 584 F. Supp. 2d 645, 658 (S.D.N.Y. 2008); N.Y. Gen. Oblig. § 5-701(a)(10). Because the statute of frauds applies to Plaintiff's agreement with INTL, "the requirement of a writing cannot be circumvented by an action for compensation in *quantum meruit*," or by a claim of unjust enrichment. *See Zeising*, 152 F. Supp. 2d at 345 (citation omitted); *Prescient Acquisition Group*, 2006 U.S. Dist. LEXIS 52879, at *15.

8

Plaintiff argues that "courts have been particularly willing to entertain *quantum meruit* claims where despite its other shortcomings or ambiguities, a defendant's writing expressly acknowledges that the plaintiff performed requested services." Opp. Mtn., at 13 n.2; *Learning Annex Holdings*, 2011 U.S. Dist. LEXIS 76081, at *9-11 (S.D.N.Y. July 11, 2011).

For quantum meriut claims, "a sufficient memorandum nced only evidence the fact of plaintiff's employment by defendant to render the alleged services," even if "it does not appear that there has been an agreement on the rate of compensation," because the "obligation of the defendant to pay reasonable compensation for the services is then implied." *Vioni v. Am. Cap. Strategies Ltd.*, 2011 U.S. Dist. LEXIS 109111, at *7 (S.D.N.Y. Sept. 26, 2011) (citation omitted) *aff'd in relevant part*, 508 Fed. Appx. 1 (2d Cir. Jan. 18, 2013). Neither the Complaint nor Plaintiff's opposition papers, however, attach or describe any such documents. In fact, the only written document Plaintiff cites is an email from Plaintiff to an INTL executive. Opp. Mtn., at 12. That email, which Plaintiff has not attached as an exhibit to his Complaint or opposition, does not "expressly acknowledge" that Plaintiff performed the requested services. *See Learning Annex Holdings*, 2011 U.S. Dist. LEXIS 76081, at *9-11. Nor does it "evidence the fact of" Plaintiff's employment by INTL. *Vioni v. Am. Cap. Strategies Ltd.*, 2011 U.S. Dist. LEXIS 109111, at *7. Instead, Plaintiff sets forth in the email the compensation terms that he "would like to obtain." *See* Dkt. No. 8, Ex. A.

Because Plaintiff has pointed to no written documents that would even arguably satisfy the statute of frauds with respect to either his quantum meruit or unjust enrichment claims, INTL's motion to dismiss these claims is GRANTED.

### b. Promissory Estoppel

Under New York law, promissory estoppel requires "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise." *Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgmt., Inc.*, 95 A.D.3d 434, 439 (1st Dep't 2012). "When a plaintiff's promissory estoppel claim seeks relief as a way to circumvent the Statute of Frauds, plaintiff must demonstrate unconscionable injury." *Ely*, 2013 U.S. Dist. LEXIS 14952, at *20 (citation omitted). Unconscionable injury is harm "beyond that which flows naturally . . . from the non-performance of the unenforceable agreement." *United Res. Recovery Corp.*, 584 F. Supp. 2d at 658 (citation omitted). Allegations that plaintiff "expend[ed] various sums of money and time, and fore[went] other business opportunities elsewhere" do not constitute unconscionable injury. *Ely*, 2013 U.S. Dist. LEXIS 14952, at *21.

Plaintiff has not alleged that INTL's actions caused him unconscionable injury. His assertions that he expended time and money and "forewent employment opportunities" while working on INTL's behalf are insufficient. *See* Compl. ¶¶ 37-38; *Ely*, 2013 U.S. Dist. LEXIS 14952, at *21. Accordingly, INTL's motion to dismiss Plaintiff's promissory estoppel claim is GRANTED.

## **CONCLUSION**

For the foregoing reasons, INTL's motion to dismiss for lack of subject matter jurisdiction is DENIED. INTL's motion to dismiss for failure to state a claim is GRANTED.

Dated: New York, New York  
      March 20, 2015

SO ORDERED

*/s/ Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge